UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAMI J. OMAISH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:06-CV-01879-LSC |
| | ) | |
| BIRMINGHAM SOUTHERN RAILROAD, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Birmingham Southern Railroad's ("BSRR") motion for summary judgment, which was filed on August 31, 2007.  (Doc. 14.)  Plaintiff Rami Omaish has sued BSRR for unlawful termination based on race and national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  (Doc. 1.) BSRR has moved for summary judgment on all of Plaintiff's claims.  The issues raised in Defendant's motion have been briefed by both parties and are now ripe for review.  Upon full consideration of the legal arguments and evidence presented by the parties, BSRR's motion for summary judgment

will be granted in all respects.

II.    Facts.[1]

Plaintiff Rami Omaish ("Omaish"), a native-born U.S. citizen of Jordanian nationality and obvious Arabic appearance, was hired by BSSR, a common carrier, short-line railroad, on October 4, 2004.   Originally employed as a diesel laborer, Omaish was promoted to the position of handyman on December 17, 2004, and the promotion was made retroactive to October 5, 2004.

On March 17, 2005, Omaish worked the 5:00 a.m. to 1:00 p.m. shift. He and Michael Marino ("Marino"), a junior employee, were assigned as in-plant mechanics.  In-plant mechanics inspect locomotives, fuel locomotives, and perform necessary repairs in the Fairfield Works.

On March 17, the Assistant Diesel Shop Foreman and Electronics Technician, Dale Foshee, asked the Locomotive Shop Foreman, Dave Palm

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

("Palm"), for assistance with connecting a multiple unit (two locomotives) at 1:30 p.m.  Palm called Marino and told him that he and Omaish had to stay over and perform the job.  Marino understood that Palm was forcing them to stay, and he told Omaish that Palm wanted them to stay.  Omaish told Marino that he had a dentist appointment and would tell Palm he could not work overtime.

According to Omaish, he called Palm on a cell phone and had the following conversation:

> He asked me to work over.  I told him I have something to do. He wanted to know what I wanted – what I had to do. I told him, you don't own me. He said, okay, go ahead and go. I said, do you want a doctor's excuse?  I'll bring you one tomorrow. Thank you.  And I went.

(Pl. Dep. at 99.)  Palm disputes Omaish's testimony and says he instructed the plaintiff to work over, told him he did not want an excuse, and he did not tell Omaish he could go.  Marino stayed at work as instructed.  Omaish clocked out at the end of his shift and got a routine dental check-up.

When Palm learned that Omaish had left work, he reported that information to Gerald Davis ("Davis"), General Diesel Foreman, and Tom

Weideman ("Weideman"), Senior Manager, Labor Relations. Davis and Weideman decided that Omaish should be terminated for insubordination because he did not stay at work as directed, and failure to perform daily inspections on three locomotives during his shift.[2]

Davis called Omaish that day at 5:00 p.m., and informed him his employment was terminated because he walked off the job. It is undisputed that no handyman at BSRR has refused an order to stay for overtime and not had his position with the company terminated. (Doc. 17 at 5 ¶ 70.)

Plaintiff testified that he overheard Palm tell an "Arabic joke" at work on one occasion. Omaish cannot remember the joke or when it occurred. Omaish also testified that Palm would tell coworkers that he was worried about his son-in-law, who was being redeployed to serve in the Middle East. Plaintiff never told Palm that these conversations made him uncomfortable, and he never complained about these conversations.

---

[2]Marino completed inspections on two of the locomotives during his overtime on March 17.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The party moving for summary judgment "always bears the initial
responsibility of informing the district court of the basis for its motion, and
identifying those portions of [the evidence] which it believes demonstrate
the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,
477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting
evidence showing that there is no genuine dispute of material fact, or by
showing that the nonmoving party has failed to present evidence in support
of some element of its case on which it bears the ultimate burden of proof.
*Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the
court must view the evidence in the light most favorable to the nonmoving
party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.
1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   Analysis.

BSRR argues that it is entitled to summary judgment on Plaintiff's claims of race and national origin discrimination[3] because Omaish cannot establish a prima facie case. Omaish has not presented, and does not argue that he has, direct evidence of racial and/or national origin discrimination; therefore, the *McDonnell Douglas* framework governs his disparate discipline claims. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1331 (11th Cir.

---

[3]BSRR also argues that Plaintiff did not properly allege discrimination based upon Arabic or Middle Eastern race in his Complaint; rather, Omaish listed his Jordanian ancestry as his "race." (Doc. 15 at 21-22.)  Because the Court finds that summary judgment is due to be granted, assuming a protected racial class properly was asserted, we do not need to address this issue.

1998).

As part of his prima facie case, Omaish "must show that his employer treated similarly situated employees outside his classification more favorably than [himself]." *Holyfield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir.1995)). This can be accomplished by establishing that he was replaced by someone outside his protected class. *See, e.g.*, *Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004). Or, Plaintiff can compare his discipline to that of employees who are not members of his class. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holyfield*, 115 F.3d at 1562 ; *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id*. "The most important factors in the disciplinary contexts are the

nature of the offenses committed and the nature of the punishments imposed." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted).  "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  *Holyfield*, 115 F.3d at 1562.

In opposition to summary judgment, Plaintiff does not make any legal arguments regarding his prima facie case.  He does not rebut BSRR's assertion that he cannot establish a prima facie case.  And, there is no evidence in the record that: (1) Omaish was replaced by someone outside his race and/or national origin; or (2) similarly situated employees outside Omaish's race and/or national origin were disciplined differently when they were accused of or engaged in nearly identical misconduct.  In fact, it is undisputed that no handyman at BSRR has refused an order to stay for

overtime and not had his position with the company terminated.  (Doc. 17 at 5 ¶ 70.)

Moreover, even if Plaintiff had established a prima facie case of discrimination, he has not adduced substantial evidence to show that BSRR's legitimate, non-discriminatory reason for its discipline was pretext for race or national origin discrimination.  BSRR has proffered evidence that Omaish was terminated for insubordination because he refused an order to work overtime and for failure to complete daily inspections on three locomotives. Plaintiff merely argues that he was allowed to leave work on the day in question and disputes that he engaged in any misconduct worthy of termination.

We do not "sit as a super-personnel department" and question how BSRR conducted its investigation, or whether BSRR should have been less harsh in its discipline.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir. 1988)).  "Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Id*.   There is no evidence in the record that the undisputed decisionmakers in this case,

Davis and Weideman,[4] "did not honestly and in good faith believe" that Omaish had refused a supervisor's order and failed to complete daily inspections during his shift when they decided to terminate his employment. *Curtis v. Teletech Customer Care Mgmt. (Telecomm.), Inc.*, 208 F. Supp. 2d 1231, 1246 (N.D. Ala. 2002).  Therefore, summary judgment is due to be granted on Plaintiff's disparate discipline claims.

V.     Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment is due to be granted in all respects.  A separate order will be entered.

Done this 18th day of January 2008.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297

---

[4]Omaish has also failed to mention, argue, or support a "cats-paw" theory that these decisionmakers were mere conduits for any discriminatory animus on the part of Palm.